UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BERCELINA GONZALEZ, | No. CV 04-3405-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on July 7, 2004, seeking review of the Commissioner's denial of her applications for Disability Insurance and Supplemental Security Income benefits. The parties filed a Consent to proceed before the undersigned Magistrate Judge on July 29, 2004. Pursuant to the Court's Order, the parties filed a Joint Stipulation on March 3, 2005, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on March 24, 1948. [Administrative Record ("AR") at 53.] Plaintiff has a first grade education and no prior work experience. [AR at 63, 68, 83, 94-97.]

On June 24, 1998, plaintiff filed an application for disabled widow's Insurance Benefits. [AR at 53-55.] She had previously protectively filed an application for Supplemental Security Income payments on December 15, 1997. [AR at 22, 243-45.] Plaintiff alleged disability due to "chronic upper extremity due to right ulnar nerve entrapment" and thoracic outlet syndrome. She claimed that she has been unable to work since January 1, 1988. [AR at 54, 63.] After her applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on April 27, 2000, at which plaintiff appeared with counsel and testified on her own behalf. A medical expert also testified. [AR at 253-68.] On May 25, 2000, the ALJ determined that although plaintiff had impairments that were severe, and she had no past relevant work, she still retained the residual functional capacity[1] to perform the full range of medium work.[2] [AR at 30-31.] Relying on the Medical-Vocational Guidelines,[3] the ALJ concluded that plaintiff was not disabled. [AR at 22-31.]

When the Appeals Council denied review on April 24, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 6-9.]

---

[1] Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

[3] The Guidelines (or "grids") present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). The grids categorize jobs by their physical-exertional requirements and present various combinations of factors, e.g., age, education, and work experience, which are relevant to a claimant's ability to find work. Id. For each combination of factors, the grids "direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." Id.

# III.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

# IV.
# THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the

claimant is not disabled and the claim is denied. Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id.  The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.   **THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has no vocationally relevant past work experience, and has not engaged in substantial gainful activity since the alleged onset of her disability. [AR at 23.]  At step two, the ALJ concluded that plaintiff's status post carpal tunnel releases on the right are severe.[4]  [AR at 23.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listing. [AR

---

[4] The ALJ found that plaintiff's other complaints, including upper and lower back pain, were not substantiated, or were not medically determinable. [AR at 24.]

at 24.] The ALJ found that plaintiff has the residual functional capacity to perform a full range of medium work activity. [AR at 25.] At step four, the ALJ concluded that plaintiff has no past relevant work. [AR at 29.]  At step five, the ALJ referred to the Medical-Vocational Guidelines and concluded that based on plaintiff's residual functional capacity, age, education, and work experience, a conclusion of "not disabled" is directed, and that there is a significant number of jobs she can perform in the national economy. [Id.] Thus, the ALJ found plaintiff not disabled. [AR at 29-31.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ erred by: 1. not properly considering her limitations in her ability to bend and stoop; 2. not properly considering her limitations in her ability to grip, grasp and finger; and 3. improperly rejecting plaintiff's testimony.  For the reasons discussed below, the Court respectfully disagrees with plaintiff, and affirms the Commissioner's decision.

**A.    ABILITY TO BEND AND STOOP**

Plaintiff argues that the ALJ's conclusion that she has the residual functional capacity to perform work of medium exertion does not take into account her ability to bend and stoop. Specifically, she asserts that Dr. Jalil Rashti's observed forward flexion limitation to 40 degrees out of the normal 90 degrees would not allow her to "engage in the strenuous forward bending required of medium work up to two-thirds of the day." Joint Stipulation at 6.  Defendant counters that the ALJ properly relied on the findings and opinions of the consultative examiner and two state agency reviewing physicians, and that a more restrictive residual functional capacity was not warranted.

An evaluation conducted in April, 1998, by Dr. Jalil Rashti, an orthopedic surgeon, was normal aside from a noted limited range of motion of plaintiff's lumbar spine, i.e., plaintiff's flexion was found to be 40 degrees, with normal being 90 degrees.  Nevertheless, Dr. Rashti concluded that plaintiff would be able to sit for about six hours, stand and walk for six hours, occasionally lift

50 pounds and frequently lift 25 pounds. [AR at 145-49.] He noted that plaintiff did not appear to be in acute distress, could move around the examination room and get on and off the examination table without difficulty, could ambulate without difficulty, walked without a limp, and could walk on her heels and toes without difficulty and without support or the use of an assistive device. He also noted that plaintiff was able "to squat completely and recover to a standing position without help or support." [AR at 146.] The examination found her wrists and hands, as well as her fingers, to be within normal limits. [AR at 147.] Plaintiff had five pounds of grip strength on both the right and left sides. [AR at 149.] Her straight leg raising test was negative in both the sitting and supine positions. [AR at 147.]

A state agency physician concluded in May, 1998, that plaintiff could frequently lift 25 pounds and occasionally lift 50 pounds, could stand and/or walk for six hours, and sit for six hours, in an eight hour day, and can push and/or pull without limitations. He noted that plaintiff's range of motion of her lumbar spine was reduced, but concluded that she had no postural limitations aside from no heavy lifting. No manipulative limitations were found. [AR at 150-57.] These findings were confirmed by another state agency physician in September, 1998, who also concluded that a medium residual functional capacity was appropriate. [AR at 39, 157.]

In January, 1999, plaintiff complained to Dr. A. Rittmann that she had pain in her lower back that had started two months earlier. He diagnosed her with obesity, probable osteoarthritis, and status post right carpal tunnel syndrome. [AR at 120.]

Although Dr. Rashti found that plaintiff could perform the equivalent of medium work, he did not comment on her ability to bend and stoop. The ALJ in his opinion addressed Dr. Rashti's finding that plaintiff had limited flexion of the back [AR at 25], and accepted Dr. Rashti's conclusions concerning plaintiff's ability to lift, stand, walk and sit. [AR at 27.] Plaintiff argues that by accepting Dr. Rashti's conclusions, the ALJ necessarily adopted the "clear implication" in the record that her range of motion of the lumbar spine is restricted. Citing Social Security Ruling[5] 85-

---

[5] Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations."

6

15, plaintiff contends that an individual doing medium work must be able to stoop frequently, i.e., from 1/3 to 2/3 of the time, and that the evidence does not support the inference that plaintiff -- with the limited range of motion in her back -- could do such activity.  Further, since stooping involves bending the spine at the waist (SSR 85-15), and frequent stooping is necessary for medium exertion jobs (id.), a person with less than half the normal forward motion in her lumbar spine cannot engage in medium work activity.

An ALJ is entitled to rely on the opinion of a non-treating source that is based on independent clinical findings. Andrews, 53 F.3d at 1041.  Dr. Rashti concluded that plaintiff is able to perform the tasks necessary to engage in medium work, despite knowing that the range of motion in her back was limited.  This is an implicit finding that plaintiff is not restricted in her ability to bend and stoop to any degree that would limit her functional capacity.  Indeed, Dr. Rashti's opinion was adopted by two state agency physicians, neither of whom found any postural or manipulative limitations, aside from heavy lifting. [AR at 152.]  These findings, supported by the record, also constitute substantial evidence. Lester, 81 F.3d at 831.  Plaintiff's contention that she cannot frequently stoop and crouch in order to perform a full range of medium work is also contradicted by Dr. Rashti's observations that plaintiff was able to walk without difficulty, squat completely and recover to a standing position without help, and raise her legs appropriately.

Plaintiff's reliance on Baker v. Apfel, 159 F.3d 1140, 1142 (8th Cir. 1998), is misplaced.  The court there merely noted that while the record did not contain evidence of a limited range of motion, it did show limits on the plaintiff's ability to stoop, lift and carry.  The case certainly does not stand for the proposition that a limited range of motion necessarily results in restrictions on bending and stooping.  Rather, it illustrates the point that each individual's restrictions must be determined by an examination of that individual.  Such an examination was performed here by Dr. Rashti.  While plaintiff argues that the concept of a deficient range of motion in the lumbar spine and an intact ability to bend and stoop "do not belong together," Dr. Rashti concluded, based on his examination, that they do.  As substantial evidence supports the conclusion of the ALJ that

---

Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

7

1  plaintiff can perform the full range of medium work, without any limitations on stooping or
2  crouching, remand is not warranted on this issue.

**B.     ABILITY TO GRIP, GRASP AND FINGER**

Plaintiff next contends that the ALJ rejected the presence of a manipulative impairment that would erode plaintiff's ability to perform work at the medium level of exertion, and that the ALJ improperly rejected the evidence from various physicians that justifies a finding of disability based on plaintiff's grip strength limitations. Joint Stipulation at 10-15. The Court disagrees with plaintiff.

In February, 1994, a median nerve decompression on the right side was performed on plaintiff. [AR at 136-37.] It was noted by Dr. Richard Mehlman in September, 1994, that plaintiff had difficulty closing her right hand since having surgery for carpal tunnel syndrome. [AR at 128.] Dr. Robert Schatz, an internist, examined plaintiff in September, 1998. He indicated that plaintiff had mild pain in the right side, but her range of motion in her lower extremities was within normal limits. Her spinal range of motion was not evaluated, however. Her grip on both sides was found to be weak. Dr. Schatz noted diminished sensation in plaintiff's right arm. [AR at 161.] She could walk unassisted. [AR at 161.] There was "no approximation with the right fingers." [AR at 159-62.]

In February, 1999, Dr. Neal Sheade consulted with plaintiff concerning thoracic outlet syndrome and tennis elbow. [AR at 169.] He concluded in April, 1999, in a check the box form, that plaintiff can occasionally and frequently lift only less than ten pounds. Her ability to push and/or pull is limited in her upper extremities as a result of left elbow and forearm pain when extending her left hand "at wrist against resistence." [AR at 229-31.] Dr. Mehlman indicated in September, 1999, that plaintiff "has chronic upper extremity disability due to right ulnar nerve entrapment and thoracic outlet syndrome. She cannot perform heavy lifting or other intensive physical labor." He also noted that she "experiences bilateral upper extremity numbness and motor weakness." [AR at 236, 238.] These conclusions, referred to by plaintiff as "prescription pad" prohibitions, do not contain clinical or diagnostic findings. Dr. Kroeger, the medical expert, testified that plaintiff "at most" might be limited to occasional, repetitive gripping, pushing, and pulling on the right side. He testified that the limitations would be "[v]ery minimal at most." [AR at 265.]

To reject the contradicted opinion of a treating or examining physician, the ALJ must provide specific and legitimate reasons supported by the record. Lester, 81 F.3d at 830-31. Plaintiff argues that the ALJ did not articulate specific and legitimate reasons for rejecting the opinions of Dr. Sheade, whose conclusions that plaintiff could lift and carry less than 10 pounds are consistent with the findings of diminished grip strength and numbness described by Dr. Rashti and Dr. Schatz. In rejecting Dr. Sheade's limitations, the ALJ remarked that his opinions were based on plaintiff's allegations and "effort-dependent testimony," and that plaintiff is "not entirely credible." He also observed that the records did not substantiate Dr. Sheade's opinion, and that Dr. Sheade is not an orthopedic specialist. [AR at 26.] Plaintiff contends that Dr. Sheade is a physiatrist, well-versed in orthopedic issues, and so his opinion should be given as much credence as that of Dr. Rashti, if not more. Even putting aside the ALJ's reliance based on Dr. Sheade's specialty, however, the ALJ could properly reject Dr. Sheade's opinions by relying on the fact that Dr. Sheade's records did not support his conclusion. See Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected treating physician's testimony in favor of testimony of other examining physicians, where treating physician's notes did not reflect reasons for imposing limits on plaintiff, or that such limitations were ever recommended to plaintiff). Plaintiff in fact concedes that "the exact parameters of Dr. Sheade's treatment" are unclear from the record. Joint Stipulation at 13. Given the lack of records showing details of any examination, tests or findings, the ALJ's conclusion is accurate. Further, reliance by a physician on the statements of a less-than-credible plaintiff is a sufficient reason to reject medical statements. See Morgan v. Commissioner of Social Security Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("[a] physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (citing Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989)). As discussed below, plaintiff's complaints have been properly rejected. The ALJ thus provided specific and legitimate reasons to reject Dr. Sheade's opinion.

The ALJ also rejected the opinion of Dr. Mehlman, finding that nerve entrapment and thoracic outlet syndrome were not substantiated diagnoses; there is no information as to the last

time Dr. Mehlman examined plaintiff; no clinical or diagnostic findings were provided to substantiate plaintiff's claim of numbness or weakness (and Dr. Mehlman thus appeared to have relied on plaintiff's subjective complaints); inconsistencies exist in his reports that are only seven months apart; his opinion is inconsistent with objective medical evidence and the opinions of other physicians; and his area of expertise appears to be infectious diseases. [AR at 26-27.] The rejection of Dr. Mehlman's opinion was appropriate. Plaintiff concedes that there are no chart notes to support his conclusions. Joint Stipulation at 14.

As the ALJ need not accept a treating physician's opinion which is "brief and conclusionary in form with little in the way of clinical findings to support [its] conclusions," plaintiff has not shown that the ALJ erred in rejecting any physician assessment to the extent that it concerns plaintiff being permanently disabled. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989) (quoting Young v. Heckler, 803 F.2d 963, 968 (9th Cir.1986)); Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995) (the ALJ need not accept a treating physician's opinion which is "conclusory and unsubstantiated by relevant medical documentation"); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992) (ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). In addition, the ALJ is not required to accept a medical opinion that is conclusory and inadequately supported by medical findings, especially when the opinion is in the form of a check-off report. Magallanes, 881 F.2d at 751. See also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctor's opinion because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports). Dr. Sheades' check-the-box assessment, and Dr. Mehlman's conclusory remarks unsupported by clinical findings, were properly rejected here.

Although the testimony of the medical expert indicated that plaintiff might be limited to occasional gripping, pushing and pulling on the right side, he also indicated that at most plaintiff had only "minimal" limitations. [AR at 265.] Dr. Rashti examined plaintiff and concluded that she could perform medium work. To the extent that these two opinions conflict, it is the ALJ's responsibility to resolve conflicts in the medical testimony. Magallanes v. Bowen, 881 F.2d 747,

749 (9th Cir. 1989). See also Morgan, 169 F.3d at 601 ("when evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld.") The ALJ appropriately resolved any conflict here, and remand is not warranted.

### C.   PLAINTIFF'S CREDIBILITY

Plaintiff asserts in her Daily Activities Questionnaire that she is able to take her children to and pick them up from school. [AR at 100.] Her daughter prepares and cooks her meals. Plaintiff is able to go grocery shopping, but she needs help lifting the groceries. She is not able to do cleaning, laundry, maintenance, or ironing, and her daughter helps her complete those chores that she is able to do. [AR at 101.] She leaves the house twice a day, and generally goes to church when she leaves. [AR at 102.] She describes the pain in her right hand as "throbbing," and "numbing," with "uncontrollable cramping." [AR at 106.] The pain occurs two to three times a day and lasts a few minutes. [AR at 106.] When cramping and numbness occur, it is difficult for her to hold a brush or groom herself, and she is not able to finish the tasks that she begins. [AR at 100, 104.] She takes Motrin and ibuprofen for pain. [AR at 104.]

Plaintiff testified at the hearing, with the aid of an interpreter [AR at 255], that she did not go to school. [AR at 257.] She indicated that she has arthritis in her right arm, left arm, and right knee. Her arm is also numb. [AR at 257.] Her joints swell at her feet, and she has back pain. She has not been confined to any hospital because of her conditions, but she takes medication. [AR at 258.] She can dress herself without help and slowly bathe or shower without help. She can do a little cooking and cleaning. [AR at 260.] Plaintiff can slowly walk three blocks, can sit for less than half an hour, but she cannot use her hands because they are numb. [AR at 261.] Plaintiff takes pain medication three times a day. [AR at 262.]

The medical expert testified that plaintiff has a history of right carpal tunnel release in 1988, that was repeated in 1994. [AR at 263.] While some examiners have found diminished sensation throughout plaintiff's right arm, they do not explain the source of the numbness and have not taken x-rays to determine the source. [AR at 264.] Although there was a comment about nerve entrapment in plaintiff's records, it was not substantiated by any finding, and the tests for nerve

entrapment and thoracic outlet syndrome were negative. [AR at 265.] The expert further testified that plaintiff does not meet or equal any of the Listings, and at most plaintiff may have limitations to occasional gripping, pushing, or pulling on the right. He did not believe that plaintiff has a propensity to exaggerate. [AR at 265.] He did not discover any kind of significant finding that would explain plaintiff's pain. [AR at 267.]

The ALJ rejected plaintiff's credibility, indicating that the objective medical evidence shows that she can perform medium work, her treatment history is not consistent with disability, she exaggerated her symptoms, her reported activities do not substantiate disability, there are inconsistencies in the record, and she has a poor work history outside of the home. [AR at 28.] Whenever an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, as it was here, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (implicit finding that claimant was not credible is insufficient); see also Lester, 81 F.3d at 834 (the ALJ must provide clear and convincing reasons for discrediting a plaintiff's testimony as to severity of symptoms when there is medical evidence of an underlying impairment). Indicia of unreliability upon which an ALJ may rely to reject plaintiff's subjective complaints include: (a) activities inconsistent with a finding of a severe impairment; (b) discrepancies in plaintiff's statements; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment. See Fair, 885 F.2d at 603-04 ("if, despite his claims of pain, a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working."); Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1988); Copeland v. Bowen, 861 F.2d 536, 541 (9th Cir. 1988); Johnson, 60 F.3d at 1434 (that plaintiff received only conservative treatment for back injury is clear and convincing reason for disregarding testimony that plaintiff is disabled). If properly supported, the ALJ's credibility determinations are entitled to "great deference." Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In this case, the ALJ employed ordinary techniques of credibility determination, supported by substantial evidence in the record, to conclude that plaintiff's subjective complaints were not entirely credible. See Fair, 885 F.2d at 604 n.5. First, while medical evidence alone cannot discredit testimony as to pain, it is one factor that the ALJ was privileged to consider. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). Here, Dr. Rashti examined plaintiff and opined that she can perform medium work. Next, plaintiff herself recognizes that the records of disability "are clearly missing" (Joint Stipulation at 21), which may explain why her treatment history is not consistent with her claimed limitations. But plaintiff has the burden of establishing disability. It is not the ALJ's -- or this Court's -- role to speculate what unpresented records exist, or what they might say even if they do exist. See 20 C.F.R. §§ 404.1512, 416.912 ("In general, you have to prove to us that you are . . . disabled . . . This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairments."); Drouin, 966 F.2d at 1257; Johnson, 60 F.3d at 1432 (placing burden of production on claimant). Indeed, the absence of supporting records substantiates the ALJ's findings concerning plaintiff's credibility. In addition, the ALJ noted that plaintiff's claims that she can only lift a loaf of bread and that she spends a typical day lying down, sitting and walking around the house, are not substantiated by her "performances" for Dr. Rashti and Dr. Schatz, and by the findings that she has no muscle atrophy and normal strength in her extremities. [AR at 28, 261.] The ALJ further referred to plaintiff's own reports that she is able to take her children to and from school, go to church, do grocery shopping (only needing help lifting the groceries), and leave the house twice a day. [AR at 28.] Inconsistencies between a claimant's testimony and her daily activities may be considered by an ALJ in weighing a claimant's credibility. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).[6] The fact that there may be other interpretations of a claimant's testimony that are

---

[6] The Court discounts some of the reasons given by the ALJ to reject plaintiff's testimony, finding the reasons to be insignificant or the inconsistencies only minor in nature (e.g., her level of education being either non-existent or one year; the degree of housework that she performs). The Court gives no credit to the ALJ's questioning of plaintiff's ability to speak English, or to his "poor work history" rationale. While Thomas v. Barnhart allows an ALJ to consider a claimant's poor work history in assessing credibility, a "spotty" history is different from a situation, such as

reasonable does not mean that the ALJ erred.  As long as his interpretation is reasonable and is supported by substantial evidence, it is not the role of the Court to second-guess it.  Rollins, 261 F.3d at 857.  Here, the ALJ provided multiple reasons, supported by the record, to reject plaintiff's credibility.  The decision must be affirmed.

**VI.**

**CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that: 1. plaintiff's request for remand is **denied**; and 2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 13, 2005

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

---

the one that appears to be present here, where a claimant is in a traditional role as a full-time homemaker.  Further, the Court concludes that plaintiff's language abilities are not an appropriate consideration as to credibility in the present circumstances, where there is no evidence that she is faking her actual English abilities, or lack thereof.  However, the remaining reasons provided by the ALJ to reject her credibility were clear and convincing, and are entitled to deference.